# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 08 CR 00401-4 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AHMAD WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Ahmad Williams has filed a motion for a reduced sentence under the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018). R. 1803, Def.'s Mot.[1] The government opposes the motion, arguing that Williams is not eligible because the crack-cocaine quantity for which he was held responsible at sentencing would still exceed the threshold needed to apply the 10-year mandatory minimum under 21 U.S.C. § 841(b)(1)(A). R. 1811, Gov.'s Resp. The parties' arguments require an interpretation of the First Step Act, as well as the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, 2372 (2010), and how those two laws interact with the unique circumstances of Williams' case. As explained below, the Court concludes that Williams' actual conviction was for an offense exceeding 50 grams of crack cocaine, and that amount is now lower than the updated threshold for the 10-year minimum at 21 U.S.C. § 841(b)(1)(A). So Williams is eligible for relief under the First Step Act. A full explanation is set out below.

---

[1] Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

Having said that, the Court reserves a decision on whether—and if so, by how much—to reduce Williams's sentence under 18 U.S.C. § 3553(a) until the parties file position papers on whether the Court must hold an in-person resentencing. The parties' submissions are due on September 9, 2019.

## I. Background

In August 2008, Ahmad Williams and his co-defendants were charged with various drug crimes arising from a large drug-trafficking operation on the South Side of Chicago. *United States v. Long*, 748 F.3d 322, 325 (7th Cir. 2014). On Williams specifically, the indictment charged a conspiracy to distribute and to possess with intent to distribute 50 grams or more of crack cocaine and 5 kilograms or more of cocaine under 21 U.S.C. § 846 (Count 1), and a substantive possession with intent to distribute of 50 grams of more of crack cocaine, 21 U.S.C. § 841(a)(1) (Count 22). R. 230, Indictment at 1-5, 26.

In December 2009, Williams entered a blind plea of guilty (no written agreement with the government) to Count 1. R. 523, 12/18/09 Minute Entry; R. 1368, Plea Colloquy Tr. at 3:10-4:9, 14:16-16:9.[2] Five of Williams's co-defendants then went

---

[2]It bears noting that Williams did *not* plead to crack cocaine (he pled only to cocaine) and did not specific a quantity of cocaine. Plea Colloquy Tr. at 3:10-4:9, 14:16-16:9. That means that under *Alleyne*, no mandatory minimum should have applied at the time of sentencing. *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Instead, Williams should have been sentenced under 21 U.S.C. § 841(b)(1)(C), which has no mandatory minimum and a maximum term of 20 years.

Having said that, the sentencing court clearly sentenced Williams as if he had pled to the 50-gram offense, which before the Fair Sentencing Act would have garnered him a mandatory minimum of 10 years. The sentencing judge explicitly stated that his hands were tied by a 10-year mandatory minimum. R. 1406, Sentencing Tr. at 21:22-22:15. More importantly, the Seventh Circuit also treated the issue as if Williams had been sentenced under 21 U.S.C. § 841(b)(1)(A). *Long*, 748 F.3d at 331. And even though the Seventh Circuit

2

to trial and were convicted of conspiracy with intent to distribute 50-plus grams of crack cocaine, as well as other offenses. *Long*, 78 F.3d at 325.

Williams was sentenced in February 2012. At sentencing, the government argued that Williams was responsible for 44 kilograms of crack cocaine, that is, "all the foreseeable dealing of his coconspirators in furtherance of the conspiracy." *Long*, 748 F.3d at 331; R. 1163, Gov.'s Sentencing Memo at 5. Between the time of the alleged conduct and Williams's sentencing, however, the sentencing regime for crack cocaine offenses had changed. In 2010, Congress enacted the Fair Sentencing Act, which changed the threshold for the 10-year mandatory minimum from 50 grams to 280 grams of crack cocaine. R. 1160, Williams Sentencing Memo at 6-7. So Williams argued in his sentencing memo that, as a legal matter, he should be sentenced under the new regime, even though his conduct occurred under the old one. *Id*. Williams's sentencing memo also argued that, as a factual matter, the government could prove only two 63-gram transactions (126 grams in total), short of the full 280 grams triggering the 10-year mandatory minimum under the Fair Sentencing Act. *Id*. at 4 n.4. The sentencing court decided that that argument failed, however, because Seventh Circuit case law at the time instructed district courts that the Fair Sentencing Act did not apply retroactively to conduct that took place before the Act

---

opinion does not explicitly describe the government's position on appeal, *id*., it is reasonable to infer that the government advocated affirming Williams's apparently mandatory 10-year sentence under § 841(b)(1)(A). So, although Williams did not plead guilty to any amount of crack cocaine, this Court is bound by the Seventh Circuit's characterization that Williams was convicted of the 50-gram offense under § 841(b)(1)(A).

3

was enacted. *See United States v. Fisher*, 635 F.3d 336, 338 (7th Cir. 2011), overruled by *Dorsey v. United States*, 567 U.S. 260, 264 (2012).

At sentencing, the previously assigned judge found that Williams was responsible for the full 44-kilogram amount of crack cocaine advocated by the government. R. 1406, Sentencing Tr. at 10:25-11:1; 12:9-14. The district court then sentenced Williams to a term of 10 years of imprisonment, plus five years of supervised release. *Id.* at 23:6-23. During sentencing, the district court noted that it might have have sentenced Williams to a modestly shorter term were it not for the 10-year mandatory minimum.[3] *Id.* at 21:22-22:15 ("[I]t's possible that if it weren't for the mandatory minimum, I might give you a sentence that was a little lower, but it wouldn't be much lower.").

Then, in 2014, Williams and his co-defendants appealed their sentences to the Seventh Circuit. The Seventh Circuit explained that *Dorsey* had overruled *Fisher*. *Long*, 748 F.3d at 328. So Williams and his co-defendants should have been sentenced under the Fair Sentencing Act, because it was already in effect when they were *sentenced*. *Id.* Although *Long* stated that the sentences would have to be vacated for that reason "unless the failure to apply the [Fair Sentencing Act] was harmless," *id.*, the opinion does not appear to have conducted a harmless-error analysis specific to Williams. Instead, the Seventh Circuit addressed another argument raised by

---

[3]At sentencing, Williams did *not* argue that any facts used to determine his mandatory minimum should have been charged in the indictment and either expressly proven to a jury beyond a reasonable doubt or admitted in his guilty plea. Gov.'s Resp. at 3. That is, he did not make an argument foreshadowing *Alleyne*, which was decided by the Supreme Court the following year. *See Alleyne*, 570 U.S. at 103.

4

Williams. Specifically, Williams argued that, under *Alleyne v. United States*, 570 U.S. 99, 103 (2013)—another case that had been decided after Williams' February 2012 sentencing—the mandatory-minimum quantity and drug type had to be proven to a jury beyond a reasonable doubt. On plain error review, the Seventh Circuit held that any *Alleyne* error was harmless, because the jury could not possibly have held Williams responsible for less than 280 grams of crack cocaine. *Long*, 748 F.3d at 330-32. The Seventh Circuit affirmed Williams's 10-year sentence. *Id*.

In 2018, Congress passed the First Step Act. Among other things, this law allows district courts to reduce sentences for defendants who were sentenced before the Fair Sentencing Act was enacted, so long as the offense is a "covered offense." First Step Act § 404(a), (b). Williams seeks relief under this Act.

## II. Analysis

Whether Williams is eligible under the First Step Act is a question of statutory interpretation. Section 404(a) of the Act sets out the offenses that it covers, defining a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 ... that was committed before August 3, 2010." First Step Act § 404(a). The question is whether Williams's "offense" for this purpose is defined by the crack-cocaine amount charged in the indictment (50 grams or more, *see supra* n.2) or the quantity found by the sentencing judge (44 kilograms). If "covered offense" is defined by the facts found by the sentencing court, then Williams cannot possibly be eligible for First Step Act relief—even post-2010 (and maybe forever), 44 kilograms of crack cocaine is

5

far above the Fair Sentencing Act's 280-gram threshold for application of the 10-year mandatory minimum at 21 U.S.C. § 841(b)(1)(A).

District courts have come out both ways on this issue, and no appellate court has reached it yet. *See* Gov.'s Resp. at 16-21; Def.'s Reply at 3. There have been four decisions in this District, and they all come out in Williams' favor. *United States v. Wright*, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019) (Castillo, J.); *United States v. Johnson*, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019) (Leinenweber, J.); *United States v. Booker*, 2019 WL 2544247, at *2-3 (N.D. Ill. June 20, 2019) (Lefkow, J.); *United States v. Edwards*, 95-cr-00508-5, Dkt. 1210, First Step Act Op. at 4-5 (N.D. Ill. Aug. 9, 2019) (Leinenweber, J).

The government makes a two-step argument that "covered offenses" are defined by the defendant's actual conduct as decided at sentencing. First, the government argues that the phrase "statutory penalties for which" refers back to the word "violation," instead of referring back to the term, "Federal criminal statute." Gov.'s Resp. at 8-10. And second, it argues that the term "violation" should be read to refer to actual conduct, not to the offense of conviction as defined by statute. *Id*. Under the government's framework, if "statutory penalties for which" refers to "violation" (and not "Federal criminal statute"), and if "violation" must mean "underlying factual conduct" (instead of "offense of conviction"), then the government wins because Williams conspired to traffic 44 kilograms of cocaine. If either of those propositions does not hold, then Williams wins.

6

On the first step (no pun intended), the government argues that if the term "statutory penalties for which" referred back to the term "Federal criminal statute" instead of "violation" (as the government argues it should), then there would be a redundancy in the statute. Gov.'s Resp. at 9-10. That is, the law should not be read to say, in effect, "a federal criminal statute, the statutory penalties for which," because the word "statutory" there would be totally unnecessary. *Id*. As a result, the government argues, "statutory penalties for which" must modify "violation." *Id*. This argument puts a lot of store in the avoid-redundancy canon of statutory construction. But it is not a particularly strong argument, because a legislative drafter might readily choose to repeat the word "statutory" in an attempt to make the point clearer. Indeed, in the context of federal sentencing, in which the Sentencing Guidelines still play a major role, modifying the word "penalties" with the adjective "statutory" does not seem particularly redundant.

Just as importantly, it bears emphasis that the starting point on this interpretive analysis is the term "covered *offense*." The term is *not* "offense conduct." And a person's conduct does not qualify as an offense unless a statute defines the conduct as a crime. Indeed, the federal criminal restitution statutes, 18 U.S.C. § 3663 and 18 U.S.C. § 3663A, use the term "offense" many times in setting out the scope of restitution. In *Hughey v. United States*, the Supreme Court held that, under § 3663, the term "offense" means the offense *of conviction* and does *not* refer to all related otherwise-criminal conduct. 495 U.S. 411, 415 (1990) (emphasis added). Specifically, restitution could not be required "for acts other than those underlying the offense of

7

*conviction.*" *Id.* (emphasis added). In arriving at that interpretation, the Supreme Court reasoned that the "straight-forward reading" of the word "offense" is limited to the offense of conviction. *Id.* at 416. Congress would have chosen a broader term if it wanted to reach criminal conduct outside the offense of conviction. *Id.* at 418 (explaining that "had Congress intended to permit a victim to recover for losses stemming from all conduct attributable to the defendant, including conduct unrelated to the offense of conviction, Congress would likely have chosen language other than 'the offense,' which refers without question to the offense of conviction"—even though the term "offense of conviction" does not appear in the statute).[4]

Against this, the government cites three cases to argue that the term "offense" refers to the defendant's actual conduct rather than an offense of conviction. But none of those cases involve statutes like this one. First, the government cites *Sedima, S.P.R.L. v. Imrex Co., Inc.*, in which the Supreme Court interpreted the term "violation" as "only a failure to adhere to legal requirements," rather than a formal conviction. 473 U.S. 479, 489 (1985); *see also* Gov.'s Resp. at 8-9. But *Sedima* interpreted whether convictions were necessary for a defendant's conduct to qualify as "racketeering *activity*" in RICO. *Id.* (emphasis added). So *Sedima* does not define the term "offense" at all. The word "offense" *is* referenced in the opinion, but only because it is used in one of the many sub-sections of the definition of racketeering activity. 18 U.S.C. § 1961(1)(D) (including "any offense involving fraud ...."). The

---

[4]For a more recent example of a similar definition of "offense," take *Gamble v. United States*, 139 S. Ct. 1960 (2019). There, the Supreme Court explained that the term "offense" was understood—at least at the founding—to be "defined by a law" so that conduct that violates both state and federal law is not one offense but two. *Gamble*, 139 S. Ct. at 1965.

8

Supreme Court did not consider the word "offense" in its actual analysis at all. Instead, not surprisingly the Court interpreted "racketeering activity" to apply to, well, "activity."

Also, *Sedima*'s reference to the word "violation" was a minor point in the statutory analysis. There were several other contextual clues that an underlying conviction was not required to qualify as racketeering activity: § 1961 defines a predicate act to "involve conduct that is '*chargeable*' or '*indictable*,' and 'offenses' that are '*punishable*,' under various criminal statutes." *Id.* at 488 (cleaned up, emphases added). Those contextual clues heavily suggested that the acts did not need to have already resulted in criminal convictions—just that they would have been *able* to result in convictions. *Id.* Plus, as the Supreme Court noted, "RICO is to be read broadly ... and was an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Id.* at 497-98. Requiring an underlying criminal conviction for RICO liability would have defeated the purpose of the statute. Nothing of the sort applies to the First Step Act.

Next, the government cites *United States v. Hayes*, Gov.'s Resp. at 9, which held that a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A) could be any crime of violence committed against "a spouse or domestic victim"—the domestic nature of the victim's relationship with the aggressor did not need to be an element of the crime. 555 U.S. 415, 421-26 (2009). But like *Sedima*, *Hayes* does not directly interpret the word "offense." Nor did it suggest more broadly that a real-

9

conduct interpretation applies to all federal criminal statutes. The statutory provision at issue was this:

> [T]he term 'misdemeanor crime of domestic violence' means an offense that … has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33)(A)(ii). The question in that case was *not* whether the requirement of the use of force or a deadly weapon was defined based on the statutory elements of the crime or instead based on actual conduct. *See Hayes*, 555 U.S. at 421-21. The question instead was whether the later clauses defining the *relationship* between the aggressor and victim should be understood to require that the relationship was an element of the predicate offense. *Id.* at 418 ("[T]o trigger the possession ban, must the predicate misdemeanor identify as an element of the crime a domestic relationship between aggressor and victim?"). Based on the rules of grammar, *id.* at 421-24, as well as reasons of practicality, *id.* at 426-29, the Supreme Court held that an element defining the relationship between aggressor and victim was *not* required—the words "has, as an element" did not apply to the later clauses in the sub-section, *id.* at 426. But the Supreme Court did not abandon the categorical approach to the requirement that the crime be violent, and it certainly did not hold that terms like "crime," "offense," or even "violation" could or should always be understood to refer only to actual conduct rather than the elements of the crime of conviction.

10

Finally, the government compares this case to *Nijhawan v. Holder*, in which the Supreme Court held that "aggravated felony" for the purposes of deportability should be defined based on the particular facts of the crime (the "circumstance-specific" approach), rather than by the elements of the offense (the "categorical" approach). 557 U.S. 29, 32-35 (2009); *see* Gov.'s Resp. at 9. Yet again, however, the provision at issue there is quite different from this one. The immigration law described an "offense that involves fraud or deceit in which the loss to the … victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). There, the words "in which" strongly implied an individualized factual inquiry. *See Nijhawan*, 557 U.S. at 37-39 (discussing the importance of the words "in which"). There is no such clause in the pertinent provision of the First Step Act. Plus, the Supreme Court in *Nijhawan* expressly acknowledged that the categorical approach *is* sometimes appropriate. *Id.* at 33-34 ("[W]ords such as 'crime,' felony,' 'offense,' and the like sometimes refer to a generic crime ... and sometimes refer to the specific acts in which an offender engaged on a specific occasion."); *see also id.* at 34 (citing *Taylor v. United States*, 495 U.S. 575 (1990); *James v. United States*, 550 U.S. 192 (2007); *Chambers v. United States*, 555 U.S. 122 (2009)). So none of the government's offered cases requires the outcome that it advocates.

In the end, then, the straightforward reading of "offense" is that it refers to the offense of conviction, not the defendant's related conduct. To the extent that there is ambiguity, the rule of lenity would kick in and require an interpretation in favor of the defendant. *See Albernaz v. United States*, 450 U.S. 333, 342 (1981) ("the rule of

lenity is a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose").[5] Williams's proposal—that a "covered offense" is defined by the offense of conviction—will increase eligibility for sentencing reductions, so his proposed interpretation gets the benefit of the rule of lenity to the extent that the First Step Act is ambiguous.

That conclusion also fits better with the legal landscape in place when Congress passed the First Step Act in 2018. In 2013, the Supreme Court made clear that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 570 U.S. 99, 103 (2013). Although *Alleyne* is not available retroactively via 28 U.S.C. § 2255, by 2018 Congress knew that courts were no longer constitutionally permitted to impose mandatory minimums based solely on judicial fact-finding at sentencing. Congress would not have expected federal courts to then double-down on those unconstitutional findings in applying the First Step Act.[6]

None of the government's additional arguments on congressional intent are persuasive. For example, the government argues that Congress intended for "courts

---

[5]It is worth noting that the sole basis offered by the government against the rule of lenity's application is that the First Step Act is not ambiguous. In another case, perhaps a fuller adversarial presentation on this issue would explore whether the rule can ever be applied to sentencing reduction statutes, as distinct from first-instance penalty provisions.

[6]As another court has explained, "[c]onstruing section 404 in the context provided by *Alleyne* …, courts should reject a reading of the statute that would preclude eligibility for relief under the First Step Act due to a judicial finding of drug quantity many years ago." *United States v. Allen*, 384 F. Supp. 3d 238, 242-43 (D. Conn. 2019) (citing *Rust v. Sullivan*, 500 U.S. 173, 191 (1991), for the proposition that Congress "legislates in light of constitutional limitations.").

to assess eligibility based on a case-specific approach." Gov.'s Resp. at 10-11. Also, the government warns that taking Williams' approach would create a new set of unfair disparities. Gov.'s Resp. at 10-12. Here is their theory: the government argues that it previously charged defendants like Williams with 50 grams of crack cocaine *because* that was all that was required to meet the threshold for the 10-year mandatory minimum. *Id*. Now, the government says, it would charge those similarly situated defendants with 280 grams—the new threshold for the 10-year minimum. *Id*. Because the government charged defendants in Williams' position with 50 grams of crack cocaine, but now charges them with 280 grams, defendants who were sentenced under the old regime get an unfair chance at sentences even lower than current defendants whose conduct is factually identical. *Id*. at 12 ("[U]nder the defense view, nearly every defendant charged under those statutes would be treated differently than identically situated defendants charged after the Fair Sentencing Act became effective, even if their violations involved crack quantities substantially exceeding the new statutory thresholds."). Even worse (in the government's view), interpreting the statute Williams' way would allow many defendants to gain that unfair advantage. *Id*. at 11.

But the government's concerns should be allayed by the actual mechanics of the First Step Act. The Act does not *require* a judge to reduce a sentence after holding that the defendant is eligible for relief. Instead, the court "*may … impose a reduced sentence*." First Step Act § 404(b) (emphasis added). Congress went out of its way to make this clear, even adding, "Nothing in this section shall be construed to require a

13

court to reduce any sentence pursuant to this section." First Step Act § 404(c). Not only are judges not required to reduce the sentence, but they would naturally take evidence about the drug quantity into account in doing so. That is perfectly in line with *Alleyne*, in which the Supreme Court explained that judicial fact-finding is still important in the sentencing process—just not for setting mandatory minimums and statutory maxima. *Alleyne*, 570 U.S. at 116 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). The government's response even advocates this approach. Gov.'s Resp. at 22.

So, suppose there was ample evidence that two defendants each sold 300 grams of crack cocaine, but one was charged in 2010 with the 50-gram threshold, while the other was charged in 2015 in an indictment specifying 280 grams or more. Under the First Step Act, even as interpreted by Williams, there is no reason why a court would treat them any differently in terms of the ultimate sentence. Williams's interpretation of the Act would simply adjust the first defendant's *mandatory minimum* in line with the modern threshold. And to be clear, it is not as if simply charging current-era defendants with crack cocaine in excess of 280 grams automatically allows for application of the mandatory minimum anyway—under *Alleyne*, the defendant must either plead to that amount or it must be found by a jury beyond a reasonable doubt.

Despite what the government argues in its discussion of *Dillon v. United States*, 560 U.S. 817, (2010), taking *Alleyne* into account in this way is not tantamount to applying *Alleyne* to Williams' case retroactively. *See* Gov.'s Resp. at 12-14. Instead, it is simply acknowledging that *Alleyne* was the legal backdrop to the First Step Act and using that backdrop to help elucidate an otherwise close question of statutory interpretation. So of course *Alleyne* does not apply retroactively to Williams' case. But it does provide another clue that Congress intended "covered offense" to refer to the crime of conviction—not the actual conduct determined by the judge at sentencing.[7]

Finally, as for any concern the government might have about the sheer volume of litigation, Gov.'s Resp. at 11, that is only weak evidence of congressional intent. It does not outweigh the competing textual and contextual signals that the word "offense" means the offense of conviction.

### III. Conclusion

For the reasons explained above, Williams is eligible for relief under the First Step Act. The remaining procedural question is whether to hold an in-person re-sentencing. The Act does not say explicitly that a district court must do so. It simply states that the district court "may ... impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2020 ... were in effect at the time the covered offense was committed." First Step Act § 404(b). Courts within the Seventh Circuit have

---

[7]Note additionally that under *Alleyne*, each mandatory-minimum threshold is an element of a crime (not just a sentencing factor), so 21 U.S.C. § 841(b)(1)(A), § 841(b)(1)(B), and § 841(b)(1)(C) are each distinct *crimes*. *See Alleyne*, 570 U.S. at 103. Williams was convicted—or at least, the parties and Seventh Circuit assumed he was, *see supra* n.2—under § 841(b)(1)(A). The statutory penalty for the offense at § 841(b)(1)(A) has changed, so the First Step Act applies to Williams.

15

typically decided that the First Step Act does *not* require an in-person resentencing, and this Court is inclined to agree.[8] But the Seventh Circuit has not decided the issue. The parties in this case submitted filings that all seem to assume that an in-person resentencing is not required. Out of an abundance of caution, the parties must position papers on whether the resentencing requires Williams' presence or instead the Court may decide the new sentence on the already-filed briefs (as well as the prior presentence report and prior sentencing record). The positions papers are due by September 9, 2019. The defense counsel's motion [1827] to reset the status hearing is granted to September 16, 2019 at 9:30 a.m.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 25, 2019

---

[8] *See Booker*, 2019 WL 2544247, at *3 n.2; *see also United States v. Coleman*, 382 F. Supp. 3d 851, 857-58 (E.D. Wis. 2019); *United States v. Glore*, 2019 WL 1761581, at *3 (E.D. Wis. April 22, 2019); *United States v. Rivas*, 2019 WL 1746392, at *8 (E.D. Wis. April 18, 2019); *see also, e.g.*, *Wright*, 2019 WL 3231383, at *4; *Johnson*, 2019 WL 2590951, at *4.